**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

STEVEN DEMARAIS,

Plaintiff,

v.

PRUDENTIAL INSURANCE CO. OF AMERICA; ART RYAN, in his capacity as trustee for the Merged Retirement Plan, a/k/a Pru Plans, a/k/a The Pru Plan, and as fiduciary for the Merged Retirement Plan, a/k/a Pru Plans, a/k/a The Pru Plan; and THE PRUDENTIAL TRUST CO., as trustee for the retirement system for United States employees and special agents,

Defendants.

Civil No. 00-005 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

---

Alan I. Silver, BASSFORD LOCKHART TRUESDELL & BRIGGS, 3350 Multifoods Tower, 33 South Sixth Street, Minneapolis, MN 55402; and Frederick L. Neff and Theresa A. Freeman, NEFF LAW FIRM, P.A., 720 Minnesota Center, 7760 France Avenue South, Suite 720, Bloomington, MN, 55435, for plaintiff.

Aaron J. Schindel and Michael R. Marra, PROSKAUER ROSE LLP, 1585 Broadway, New York, NY 10036; and Charles O. Lentz, ROBINS, KAPLAN, MILLER & CIRESI, 2800 LaSalle Plaza, 800 LaSalle Avenue, Minneapolis, MN 55402, for defendants.

Plaintiff Steven Demarais ("Demarais") has sued his former employer, Prudential Insurance, as well as trustees and fiduciaries of the Prudential retirement plan

FILED ______
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ______
DEPUTY CLERK ______

(collectively, "Prudential"). This matter is now before the Court on Prudential's motion for summary judgment. Demarais's Second Amended Complaint alleges twelve counts. Demarais has consented to the dismissal of several of these counts. The following counts are now before the Court: Age Discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 612, *et seq.*, 42 U.S.C. §§ 2000, *et seq.*, and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.03, (Count I); Retaliation under the ADEA and MHRA (Count II); Discrimination and Retaliation under the Employee Retirement Income Security Act ("ERISA") (Count III); Benefits Due under ERISA (Count IV); Breach of Fiduciary Duty under ERISA (Count VII); and Accounting (Count X). Prudential also seeks to dismiss defendant Art Ryan from the case. For the reasons discussed below, the Court will grant Prudential's motion for summary judgment.

## BACKGROUND

This is Demarais's third lawsuit against Prudential. Demarais was employed by Prudential from 1985 through 1994, and then again for one week in March 1996. Both times, Demarais resigned. After resigning in 1994, Demarais sued Prudential for wrongful and constructive termination, age discrimination, breach of employment contract, and other employment-related torts. That case was resolved by a settlement agreement and general release (the "1996 Settlement Agreement"). As part of that agreement, Demarais was reinstated at Prudential and he released all claims against the company. Under the agreement, Prudential agreed to treat Demarais's past actual service

with Prudential and his future service as "continuous service" for purposes of certain employee benefit plans.

Demarais returned to work at Prudential under the 1996 Settlement Agreement but resigned after only one week, claiming that the environment was discriminatory and "oppressive." He has not worked for Prudential since March 8, 1996. In January 1999, Demarais filed a second lawsuit against Prudential, alleging age discrimination, reprisal, and other unlawful conduct. This case was also settled, and the parties executed another settlement agreement and general release (the "1999 Settlement Agreement"). Under this agreement, Demarais waived and released all claims against Prudential arising through March 7, 1999, the effective date of the release. The release included claims under the ADEA, MHRA, ERISA, and other statutes. As part of the 1999 Settlement Agreement, Demarais agreed to cooperate with Prudential in any internal investigation or administrative, regulatory, or judicial proceeding. Such cooperation includes "appearing at [Prudential's] request to give testimony without requiring service of a subpoena or other legal process." (Planter-Smith Aff. Ex. B at 5.) Prudential agreed to reimburse Demarais for any costs connected with such cooperation.

The 1999 Settlement Agreement has an exception (the "waiver exception"), which provides that Demarais did not waive future claims for enforcement of: "the terms of [the 1999 Settlement] Agreement; vested pension, 401(k) plan, benefit plan or savings plan benefits, investments, insurance plan, or other contract or retired agent agreement." (Planter-Smith Aff. Ex. B at 2-3.)

Demarais's current action alleges that since the 1999 Settlement Agreement, Prudential has discriminated and retaliated against him for his previous lawsuits by miscalculating and reducing his pension benefits and fraudulently inducing him to take an early pension.

## ANALYSIS

### I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from

the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

## II. ADEA and MHRA Claims for Age Discrimination and Reprisal

Demarais alleges that Prudential discriminated and retaliated against him by: (1) failing to include certain sums when calculating his pension; (2) paying his pension late; (3) inducing him to collect his pension at age 55 instead of 65; and (4) violating the 1999 Settlement Agreement by failing to reimburse costs he incurred while cooperating with Prudential. Prudential argues that the first three claims are barred because they fall within the release in the 1999 Settlement Agreement. Prudential further argues that even if these claims have not been waived, Demarais has not demonstrated a prima facie case of discrimination. Finally, Prudential argues that Demarais's fourth claim is invalid because the expenses were not incurred at Prudential's request.

Under the 1999 Settlement Agreement, Demarais agreed to release all claims against Prudential, including those under ERISA, ADEA, and "any federal, state or local statute or ordinance prohibiting discrimination in employment." (Planter-Smith Aff. Ex. B at 2.) Demarais argues that this waiver does not apply here because his claims relate to matters that occurred after the 1999 Settlement Agreement took effect, and because they are specifically excluded from the release.

Demarais argues that Prudential's failure to pay him proper amounts and its inducements to accept early retirement all occurred after the Settlement Agreement's effective date, and therefore are not barred by the waiver. Although these events may have occurred after the settlement, the record shows that Demarais knew how his pension would be calculated and what his benefits would be in 1995, well before he signed the release. (*See* Schindel Dec. Ex. 8.) Therefore, any causes of action regarding Demarais's benefit calculation accrued at that time, and are barred under the 1999 Settlement Agreement.

Demarais next argues that his claims are not barred by the Agreement because they fall under the waiver exception. Demarais also contends that, at the very least, the Agreement is ambiguous as to whether it releases his claims. The Court interprets settlement agreements using general rules of contract construction. *Gilbert v. Monsanto Co.*, 213 F.3d 695, 700 (8th Cir. 2000). The meaning of an unambiguous contract is a matter of law for the Court, but the meaning of an ambiguous contract term is a fact question for the jury. *Porous Media Corp. v. Midland Brake, Inc.*, 220 F.3d 954, 959 (8th Cir. 2000). The parties disagree over the scope of the waiver exception, but this does not make it ambiguous.

The waiver generally releases all ERISA and discrimination claims. The waiver exception, however, excludes "any claim for enforcement of the terms of this Agreement, vested pension, 401(k) plan, benefit plan or savings plan benefits, investments, insurance plan, or other contract or retired agent agreement." (Planter-Smith Aff. Ex. B at 2-3.) Demarais argues that he is simply making a "claim for enforcement of the benefit plan."

Prudential argues that the waiver does not release claims for enforcement of plan terms, but only preserves claims for vested benefits under the plan. The Court finds, upon reading the 1999 Settlement Agreement as a whole, that Prudential's interpretation is the only reasonable one.[1] If Demarais' interpretation of the waiver exception prevailed, his release of ERISA and discrimination claims would be meaningless. The Court must avoid such a result. *Opus Corp. v. International Business Machines Corp.*, 141 F.3d 1261, 1265 (8th Cir. 1998) ("[C]ourts must avoid an interpretation that would render a provision meaningless."). Therefore, the Court concludes that Demarais's ADEA and MHRA claims are barred by the release in the 1999 Settlement Agreement.

Even if Demarais's claims were not barred, however, they would still be dismissed because Demarais has not made a prima facie showing of discrimination. To make a prima facie case of either discrimination or retaliation, Demarais must show a causal link between any adverse employment action and his membership in a protected group. *Yates v. Rexton, Inc.*, 267 F.3d 793, 799 (8th Cir. 2001); *Buettner v. Arch Coal Sales Col, Inc.*, 216 F.3d 707, 714 (8th Cir. 2000). Here, even if Prudential has not paid Demarais proper benefits, as he alleges, Demarais has not shown that such actions have anything to do with his age or his previous lawsuits. Demarais does allege that other Prudential employees made derogatory comments about him or his age. These, however, do not rise above the level of "stray remarks," and are insufficient to show the necessary

[1] The Court in *Hales v. Prudential Insurance Co.*, Civ. No. 00-2299, 2002 WL 1205634 (D. Minn. May 31, 2002) recently made a similar interpretation of a nearly identical contract term. *Id.* at *2.

discriminatory animus. *See Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315-16 (8th Cir. 1996).

Demarais has also not shown that Prudential's failure to reimburse him for certain costs he incurred while "cooperating" with the company violates the 1999 Settlement Agreement. The Agreement provides that Demarais would only be reimbursed for cooperation done "at [Prudential's] request . . . without requiring service of a subpoena or other legal process . . . ." (Planter-Smith Aff. Ex. B at 5.) The "cooperation" for which Demarais seeks reimbursement, however, was ordered by a federal court in the District of New Jersey. (*See* Schindel Dec. Ex. 11.) It is clear that the 1999 Settlement Agreement's reimbursement provisions do not encompass such activities. Therefore, Demarais's claims under the ADEA and MHRA must fail.

## III. ERISA Claims

### A. Count III – ERISA § 510

Demarais also makes several claims under ERISA. Count III alleges discriminatory denial of benefits under ERISA § 510, 29 U.S.C. § 1140, claiming that Prudential fraudulently induced Demarais to begin drawing pension plan benefits at age 55 instead of age 65. The parties raise the question of whether this claim is barred because Demarais did not exhaust his administrative remedies. The Eighth Circuit has not addressed the question of whether exhaustion is required for claims under § 510, and federal courts are split on the matter. *See Burds v. Union Pacific Corp.*, 223 F.3d 814, 817 (8th Cir. 2000) (noting conflicting authorities). The Court need not resolve this

question, however, because even if Demarais had exhausted his administrative remedies, his claim under § 510 would still be dismissed.

First, as discussed above, Demarais's claims for discrimination and retaliation were released under the 1999 Settlement Agreement. Second, even if it were not released, the § 510 claim would fail because it has no support in the record. In order to maintain his claim under § 510, Demarais must make a prima facie showing of, among other things, a specific intent to deny him benefits to which he was entitled. *Jefferson v. Vickers, Inc.*, 102 F.3d 960, 965 (8th Cir. 1996). Demarais alleges that Prudential discriminated against him by providing mistaken information, which led him to take his pension benefits ten years early at a lower level, thus reducing his overall level of benefits. Demarais made this decision after anonymously calling Prudential's 1-800 number for pension inquiries. The person on the other end of the line allegedly told Demarais that once he reached age 65, his pension benefits would be reduced by the amount he received in Social Security payments. Prudential concedes that this information was mistaken. Demarais argues that providing the information was discriminatory. Even though Demarais's decision may have been based on this faulty information, he provides no factual support for his allegation that Prudential tricked him into taking early disbursal. The evidence suggests that Prudential did not even know who Demarais was when it allegedly discriminated and retaliated against him. There is no evidence that Prudential intentionally deprived him of benefits, and this bars a claim under § 510. Erroneous information or miscalculations do not amount to intentional action.

Demarais also fails to state a claim with his allegation that Prudential did not properly credit him with "continuous service" under the 1996 Settlement Agreement. The Agreement provides that "Prudential shall treat Demarais's **past actual service** to Prudential **and future actual service** to Prudential as continuous service and shall provide all employee benefits predicated on such continuous service . . . ." (Planter-Smith Aff. Ex. A at 10.) Demarais argues that he should receive such credit for the time he was not working for Prudential, between 1994 and 1996. The Agreement clearly states, however, that Prudential would credit only Demarais's **actual** service with the company. It is undisputed that Demarais performed no actual service for Prudential between his first resignation on December 30, 1994 and his reinstatement on March 1, 1996. Consequently, he is entitled to no credit for this time, and his claim is without merit. For the reasons stated above, therefore, summary judgment will be granted as to Count III.

### B. Count IV – ERISA § 502(a)(1)(B)

Count IV seeks benefits due under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). The parties again argue over whether Demarais was required to exhaust his administrative remedies under this provision. This question is academic, however, because even if Demarais had exhausted his remedies, this ERISA claim was also released under the 1999 Settlement Agreement. Therefore, it must be dismissed.

### C. Count VII – ERISA § 502(a)(2)

Demarais's final ERISA claim alleges breach of fiduciary duty under § 502(a)(2), 29 U.S.C. § 1132(a)(2). Like Demarais's other ERISA counts, this claim was waived by the 1999 Settlement Agreement. Even if it was not waived, however, the claim would be without merit. Section 502(a)(2) allows a plan participant to bring an action for breach of fiduciary duty on behalf of the plan, but not on his own behalf. *Conley v. Pitney Bowes*, 176 F.3d 1044, 1047 (8th Cir. 1999); *Wald v. Southwestern Bell Corp. Customcare Medical Plan*, 83 F.3d 1002, 1005-06 (8th Cir. 1996). Demarais argues that his claim is on behalf of the plan, contending that insufficient plan contributions to him individually result in an overall loss to the plan. This argument is unavailing; plaintiffs suing Prudential in two other cases have made the same contention, and it has no more merit here than in those cases. *See Hales v. Prudential Ins. Co.*, Civ. No. 00-2299, 2002 WL 1205634 at *2 (D. Minn. May 31, 2002); *Willenbring v. Prudential Ins. Co.*, Civ. No. 01-531, 2001 WL 1202773 at *2 (D. Minn. Oct. 9, 2001). "The fact that the money damages [Demarais] is requesting would have passed through the fund on the way to [his] pocket is insufficient to raise the claim beyond one for individual damages." *Hales*, 2002 WL 1205634 at *2. Thus, even if Demarais's claim under ERISA § 502(a)(2) had not been waived, it is defective as a matter of law and must be dismissed.

## IV. Claim for Accounting

Count X is a state common law claim for accounting, alleging that Prudential mishandled the benefit plan. ERISA preempts all state laws that "relate to" an employee

benefit plan governed by ERISA. 29 U.S.C. § 1144(a); *Tower Asphalt, Inc. v. Gordon*, 840 F. Supp. 673, 674 (D. Minn. 1993). Because Demarais's claim for accounting clearly has a "connection or reference to" an ERISA plan, it is therefore preempted and is not properly before this Court. *Id.* (quoting *Shaw v. Delta Air Lines*, 463 U.S. 85, 97 (1983)).

## V. Claim against Defendant Art Ryan

Prudential argues that Demarais has not asserted a valid claim against Ryan, who is the Chief Executive Officer of Prudential. The Court agrees. Demarais has not alleged how Ryan caused him any injury. Indeed, it appears that the Second Amended Complaint makes no allegations whatsoever against Ryan. Demarais has made no argument opposing dismissing Ryan as a defendant. Therefore, the Court will dismiss Ryan from this case.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that defendants' Motion for Summary Judgment [Docket No. 31] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: Sept. 30, 2002
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

**DATE MAILED TO COUNSEL/PRO SE PARTIES:** September 30, 2002

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd